J-A28009-24

2025 PA Super 32

| | | |
|---|---|---|
| IN THE INTEREST OF: O.E.C.-A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1657 EDA 2024 |

Appeal from the Order Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000473-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: I.E.C.-A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1658 EDA 2024 |

Appeal from the Order Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000475-2020

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

OPINION BY PANELLA, P.J.E.: **FILED FEBRUARY 13, 2025**

K.G. ("Adoptive Mother") appeals from the May 23, 2024 order holding that she lacked standing to file a petition for adoption with respect to O.E.C.-A. and I.E.C.-A. (collectively, "the Children"), who are the biological brother and sister, respectively, of her adopted son, Y.C.-A.. We reverse and remand.

The trial court appropriately summarized the relevant factual and procedural history of this matter, as follows:

O.E.C.-A. was born [in] June [] 2012. [I.E.C.-A.] was born [in] April [] 2014. Y.C.-A. was born [in] September [] 2018. The Department of Human Services ("DHS") initially became aware of this family in January 2018 after receiving a report alleging medical neglect of the children. DHS learned that E.A. ("Father") and M.C. ("Mother") (collectively, "Parents") were married and living together at the paternal grandparents' house. Shortly after DHS received the medical neglect report, Mother left the grandparents' home with [the Children] and relocated to York County, Pennsylvania, in February 2018. Mother returned to the paternal grandparents' house in April 2018 and, shortly after returning, DHS received a second report alleging: (1) the [C]hildren's healthcare was being neglected; (2) domestic violence was occurring between Parents; and (3) paternal grandparents were using inappropriate discipline.

On May 3rd, 2018, DHS assisted Mother and [the Children] in leaving the paternal grandparents' home and moving to a domestic violence shelter. On May 9th, 2018, [the trial court] placed both [of the C]hildren into DHS protective custody because Mother notified DHS that she was planning to return to paternal grandparents' house. Also on May 9th, DHS obtained an order for protective custody ("OPC"), and [the Children]. were placed in foster care. On May 11th, 2018, at a shelter care hearing, . . . both [of the C]hildren's temporary commitment to DHS was ordered to stand. On August 23rd, 2018, both [of the C]hildren were adjudicated dependent by this court and their permanency goal was established as reunification. Permanency reviews were held at regular intervals after the adjudication of dependency.

On September 25th, 2018, DHS received a General Protective Services ("GPS") report alleging that Mother had given birth to Y.C.-A. The report was determined to be valid. On September 28th, 2018, DHS obtained an OPC and Y.C.-A. was placed in a foster home with Adoptive Mother through Turning Points for Children. At a shelter care hearing on October 10th, 2018, the trial court lifted the OPC, ordered the temporary commitment to DHS to stand, and that Y.C.-A.'s placement location remain confidential.

[The Children] have both lived in the same pre-adoptive foster home since October of 2019, the home of E.B. ("Foster Mother"). On December 22, 2020, DHS filed petitions to change the permanency goals of the Children to adoption. On that same

date, DHS filed petitions to involuntarily terminate the parental rights of Parents pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) . . . .

On December 7, 2021, the trial court changed the permanency goal of the Children to adoption and involuntarily terminated Parents' parental rights[.]

Trial Court Opinion, 7/31/24, at 1-3 (cleaned up).

Parents each filed appeals contesting both the termination of their parental rights and the above-referenced goal change orders. This Court affirmed in separate, consolidated writings. *See Interest of Y.A.-C., et al.*, 284 A.3d 909, at *8 (Pa. Super. 2022) (Mother's appeals); *Interest of O.C.-A., et al.*, 283 A.3d 373, at *13 (Pa. Super. 2022) (Father's appeals). Mother, alone, filed a petition for allowance of appeal with our Supreme Court, which was denied. *See Interest of Y.A.-C.*, 287 A.3d 807 (Pa. 2022).

The certified record reflects that Adoptive Mother has no biological relationship to the subject family. *See* N.T., 5/23/24, at 8. Following Y.C.-A.'s placement in her care immediately following his birth, Adoptive Mother adopted him on a date certain that is not evident from face of the record. *See id*. at 10. Adoptive Mother also serves as a foster mother to the Children's younger half-brother, whose name is not present in the certified record. *See id*. at 8; *see also* Petition for Adoption, 12/12/23, at 2-3 (unpaginated). Adoptive Mother has never served as a foster resource for the Children. *See* N.T., 5/23/24, at 9. Adoptive Mother has, however, regularly cared for the Children during twenty unsupervised sibling visits that occurred in her home

between the spring of 2022 and January 2024. *See id*. at 13. Adoptive Mother was responsible for transporting, feeding, and "directing" the behavior of the Children. *Id*. These visits included two overnights. *See id*. at 14.

On December 12, 2023, Adoptive Mother filed petitions for adoption with respect to the Children.[1] On March 15, 2024, DHS filed a memorandum in opposition to Adoptive Mother's petition arguing that she lacked standing. *See* Memorandum of Law in Opposition, 3/15/24, at 1-4.

On May 23, 2024, the trial court held a hearing regarding Adoptive Mother's standing to adopt the Children. Therein, the court considered testimony from case manager supervisor Mekeeta Hunter and Adoptive Mother. Ultimately, the trial court held that Adoptive Mother lacked standing to petition for adoption. *See* N.T., 5/23/24, at 22-23. On the record, the court opined that Adoptive Mother's relationship with the Children was predicated solely upon "court[-]ordered visitation." *Id*. at 22. Thus, the court averred that Adoptive Mother was unable to establish standing. *See id*. at 23 ("We're going strictly by the letter of the law. The relationship occurred because of a court order and that's not enough to have standing."). The same

_____

[1] The record reflects that a competing adoption petition concerning O.E.C.-A. was filed by the child's paternal uncle, I.A., in February 2024. Based upon the nature of our holding in this appeal, we need not discuss this separate filing further. *See In re K.N.L.*, 284 A.3d 121, 142 (Pa. 2022) ("[N]othing in the [Adoption] Act precludes . . . a trial court from entertaining multiple adoption petitions and then determining the best interests of the child.").

day, the court filed an order holding that Adoptive Mother did not have standing to file an adoption petition in the above-captioned cases.

On June 21, 2024, Adoptive Mother filed timely notices of appeal and concise statements of error pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) at the above-captioned cases. On July 12, 2024, this Court consolidated this cases *sua sponte* pursuant to Pa.R.A.P. 513. On July 31, 2024, the trial court filed a responsive opinion pursuant to Rule 1925(a)(2)(ii) explaining its rationale. Therein, the trial court abandoned its previously stated position and, instead, opined that Adoptive Mother lacked standing under ***In re K.N.L.***, 284 A.3d at 138-51 (Pa. 2022) (clarifying the legal standard to establish standing in adoption proceedings). ***See*** Trial Court Opinion, 7/31/24, at 4-5.

Adoptive Mother has raised the following issues for our consideration:

I.     The trial court misapplied the law and the uncontested facts when it rules that a non-foster parent lacks standing to file an adoption petition because her relationship with putative adoptees initially arose from her foster parent relationship with adoptees' siblings.

II.    The trial court misapplied the law when it determined that *in loco parentis* was required for [Adoptive Mother] to have standing to petition for adoption and when determining that the prospective adoptive mother lacked *in loco parentis* status.

III.   The trial court abused its discretion by relying on the mechanism of the [Adoptive Mother's] introduction to the prospective adoptees without properly weighing their relationship that was cultivated through non-court involved sibling visits.

Adoptive Mother's Brief at 5.

Our standard and scope of review in this context is well-established:

Issues of standing generally raise pure questions of law for which we employ *de novo* review of a trial court's decision. . . . Where factual findings and credibility determinations are at issue, we will accept them insofar as they are supported by the record. In matters arising under the Adoption Act, as well as appeals of child custody and dependency decisions, our plenary scope of review is "of the broadest type;" that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact, and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported.

***K.N.L.***, 284 A.3d at 132-33.

As a general matter, "[s]tanding relates to the capacity of an individual to pursue a particular legal action," which requires the petitioning individual to demonstrate that she has "a substantial interest in the subject matter of the litigation that must be direct and immediate, rather than remote, and which distinguishes [her] interest from the common interest of other citizens." ***Id***. at 136 (cleaned up). This doctrine is intended to "winnow out" litigants who lack a "direct interest" in the subject litigation and protect against the participation of "improper parties." ***Id***. We emphasize that standing is a "threshold issue" that "must be resolved before proceeding to the merits of the underlying action." ***Id***. at 137 (cleaned up). Moreover, "standing within an adoption proceeding is a conceptually distinct legal question from the central, substantive issue of the child's best interests." ***Id***. (emphasis added).

Although styled as three separate issues, we find that Adoptive Mother's arguments essentially present the same, unitary claim: the trial court erred

in finding that Mother lacked standing to file a petition for adoption under the specific facts of this case. ***See*** Adoptive Mother's Brief at 7-14. We are constrained to agree.

In its Rule 1925(a)(2)(ii) opinion, the trial court opined that Mother was required to establish two separate factors to establish standing:

> In ***K.N.L.***, standing to petition for adoption is subject to a two-factor analysis. First, to have standing in an adoption proceeding, a litigant must demonstrate a substantial, direct, and immediate interest in the adoption proceeding—not a "merely theoretical" interest in assuming the role of permanent parent; and second, the trial court is required to examine the purported caregiver's role and relationship to the minor child in deciding whether standing based on *in loco parentis* status exists. Regarding the substantial, direct, and immediate factors, a party will be precluded from adopting a child in custody of an agency such as DHS unless one of three criteria are met: (1) the legislature has "specifically conferred" standing for a third party; (2) the prospective adoptive parent(s) obtained the consent of DHS; or (3) the intervenor **currently** stands *in loco parentis*. ***K.N.L.***, 284 A.3d at 137.

Trial Court Opinion, 7/31/24, at 4 (emphasis in original). Respectfully, our review reveals that the above is a significant misapprehension of ***K.N.L.*** and the current state of Pennsylvania law regarding this issue.

Prior to ***K.N.L.***, standing in adoption matters was largely governed by this Court's pronouncements ***In re N.S.***, 845 A.2d 884 (Pa. Super. 2004) and ***In re Adoption of A.M.T.***, 803 A.2d 203 (Pa. Super. 2002). Therein, this Court concluded that any party was precluded from establishing standing in an adoption proceeding unless one of the following criteria was established: (1) the General Assembly had "specifically conferred standing for a third

party;" (2) the party had obtained the consent of the agency; or (3) the party currently stood *in loco parentis* to the child. **See K.N.L.**, 284 A.3d at 137 (citing **N.S.**, 845 A.2d at 886-87; **A.M.T.**, 803 A.2d at 208 n.4). Our Supreme Court concluded that this purported case law was mere *dicta*, which lacked precedential value. **See K.N.L.**, 284 A.3d at 137-38. Moreover, the High Court noted that **N.S.**, **A.M.T.**, and their progeny had erroneously conflated the application of legal standards that only applied in child custody proceedings. **See id**. at 138-40.

Specifically, the Supreme Court noted that the General Assembly had established a broad entitlement with respect to third parties who may pursue adoption. **See** 23 Pa.C.S.A. § 2312 ("**Any individual** may become an adopting parent.") (emphasis added). The High Court also flatly rejected the notion that agency consent was required in this context. **See K.N.L.**, 284 A.3d at 141 ("[T]he agency's withheld consent is not a bar to standing and has no part in that analysis[.]"). Finally, the Supreme Court also held that *in loco parentis* status was not a prerequisite to establishing standing to petition for adoption. **See id**. at 138 (declining to recognize "any requirement that *in loco parentis* status must be current to establish standing"). Instead, the High Court set forth a straightforward, single-factor test:

> [O]ne who seeks to adopt a child in the custody of an agency must demonstrate a substantial, direct, and immediate interest in the subject matter of the litigation—that is, a genuine, and not merely a theoretical," interest in assuming the role of a permanent parent who best meets the child's needs and welfare—which surpasses such an interest of ordinary, unrelated strangers.

*Id*. at 142.

Overall, it is clear that an incorrect legal standard was applied at the trial level in denying Adoptive Mother's standing to petition for adoption. In particular, the court cited *dicta* from **N.S.** that was specifically disapproved in **K.N.L.** **See** Trial Court Opinion, 7/31/24, at 4. Furthermore, it was error to conclude that **K.N.L.** requires a two-factor test that includes a demonstration of current *in loco parentis* status. **See id**. at 4-5. This was simply an incorrect reading of the at-issue precedent. All that a petitioner need establish for the purposes of standing is a "substantial, direct, and immediate" interest in "assuming the role of a permanent parent," which rises above that of an "ordinary, unrelated stranger." **K.N.L**, 284 A.3d at 142.

Applying the correct legal standard to the instant circumstances, it is quite clear that Adoptive Mother has a "substantial, direct, and immediate" interest in petitioning for adoption. There is no dispute that she has adopted Y.C.-A. and also serves as a foster parent to the Children's half-brother. **See** N.T., 5/23/24, at 8-10. Furthermore, this Court has previously determined that she is closely and mutually bonded with Y.C.-A. **See Y.C.-A.**, 284 A.3d at *8; **O.C.-A.**, 283 A.3d at *13. Additionally, Adoptive Mother has been regularly interacting with, and providing care for, both O.E.C.-A. and I.E.C.-A. during unsupervised sibling visits that have occurred over a period of approximately two years. These facts readily establish that Adoptive Mother is not a mere stranger to the Children, but an integral and trusted individual

J-A28009-24

in their lives who has demonstrated a substantial, direct, and immediate interest in pursuing adoption. **See K.N.L.**, 284 A.3d at 142.

Based upon the foregoing, we reverse the holding of the trial court concluding that Adoptive Mother lacks standing and remand for further proceedings consistent with this Opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2025

- 10 -